MICHAEL A. BILANDIC, Mayor and Local Liquor Control Commissioner of the City of Chicago, Plaintiff-Appellee, *v.* 1011 CLUB, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 78-1141

Opinion filed June 27, 1979.

Morton Siegel, of Chicago (Allan Goldberg, of counsel), for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Philip Bronstein, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff brought this action under the Administrative Review Act to review an order of the License Appeal Commission of the City of Chicago. The commission had ordered plaintiff to issue a retail liquor license to the defendant, 1011 Club, Inc., for the premises located at 4403 North Broadway in Chicago. The trial court reversed the decision of the commission, and defendant appeals.

On April 6, 1971, the voters of the 38th Precinct of the 46th Ward in Chicago voted to end the sale of liquor in the precinct in a local option election. (Ill. Rev. Stat. 1977, ch. 43, par. 166 *et seq.*) At the time the boundaries of the 38th Precinct were as follows: the east side of Broadway, the south side of Wilson, the west side of Sheridan Road, the south side of Agatite, the west side of Hazel and the north side of Montrose.

On December 1, 1975, the 38th Precinct boundaries were changed. A small part of the precinct became a part of the 25th Precinct of the 46th Ward. The larger part of the original 38th Precinct, including the subject property, was joined with part of the 26th Precinct and still was called the 38th Precinct. The boundaries of the present 38th Precinct are the south side of Wilson, the west side of Sheridan Road, the north side of Montrose and the east side of Racine. That part of the present 38th Precinct which encompasses the old 38th Precinct is "dry" and the remainder of the present 38th Precinct is "wet." The subject premises for which defendant is seeking a liquor license is located in the dry portion of the 38th Precinct.

Section 8 of article IX of "An Act relating to alcoholic liquor" provides as follows:

"The status of all the territory within any political subdivision or precinct, relative to the sale at retail of alcoholic liquor, or the sale at retail of alcoholic liquor other than beer containing not more than 4% of alcohol by weight, or the sale at retail of alcoholic liquor containing more than 4% of alcohol by weight except in the original package and not for consumption on the premises, as the case may be, shall remain the same, notwithstanding any change which may be made in the limits of any such political subdivision or precinct until the voters thereof have changed such status as to annexed or disconnected areas under the provisions of Section 8.1 of this Article, or until the voters have changed such status for areas other than annexed or disconnected areas under the provisions of Section 2 or Section 9 of this Article." (Ill. Rev. Stat. 1977, ch. 43, par. 173).

Voters residing in annexed or disconnected areas may change the status of their areas in two ways. Section 8.1(a) of article IX provides for a special election by the voters of the area. (Ill. Rev. Stat. 1977, ch. 43, par. 173.1(b).) Section 8.1(b) of article IX provides that the status of such an area may be changed by filing a petition containing the signatures of not less than two-thirds of all the legal voters residing in the area. (Ill. Rev. Stat. 1977, ch. 43, par. 173.1(b).) Unless the filed petitions are challenged within 30 days, the change in status takes place. A referendum vote is required for areas which are not annexed or disconnected. Ill. Rev. Stat. 1977, ch. 43, pars. 167 and 174.

Employing the petition procedure set forth in section 8.1(b) of article IX, defendant filed petitions with the city clerk of the city of Chicago containing the signatures of more than two-thirds of the legal voters of the new 38th Precinct. Defendant maintains that by changing the precinct boundaries, the election commissioners disconnected the subject premises from the old 38th Precinct and annexed it to the 26th Precinct to form the new 38th Precinct. Defendant thereby argues that the dry status of the

subject property could be changed by use of the petition procedure rather than by a referendum vote.

In the present case, there were no challenges to the petitions which had been filed by defendant. Accordingly, defendant submitted an application for a liquor license for the subject premises. Plaintiff refused to issue the license. Defendant appealed to the commission, and it reversed the action of plaintiff and directed him to issue a liquor license to defendant.

In reversing the order of the commission, the trial court held that the petition procedure applied only to areas which are annexed or disconnected from a political subdivision and does not apply to areas which are annexed or disconnected from precincts. The court also concluded that the portion of the 38th Precinct in which the subject property is located was neither an annexed nor a disconnected area, and that therefore defendant could not employ the petition procedure.

Since we believe the trial court correctly found that the area in which the subject property was located was neither annexed nor disconnected, we consider it unnecessary to discuss what defendant describes as the sole issue of the case: whether the provisions of section 8.1(b) of article IX apply to precincts within the city of Chicago.

The terms in question, annexed and disconnected areas, are defined by statute as follows:

" 'Annexed area' means a territory which has attached to and become a part of a different political subdivision or precinct. The term shall be an appropriate designation only until the area to which it attaches holds a referendum hereunder.

'Disconnected area' means a territory which has detached or separated from a political subdivision or precinct." (Ill. Rev. Stat. 1977, ch. 43, par. 166.)

As we have already noted, the statute also provides that although the boundary lines may change, not all of the new areas become annexed or disconnected, and provisions are set forth to allow a change of status for areas other than those which are annexed or disconnected. (Ill. Rev. Stat. 1977, ch. 43, par. 173.) In such areas, a referendum vote is required to accomplish a change of status. Ill. Rev. Stat. 1977, ch. 43, pars. 167 and 174.

In our judgment, the subject property is not located in a portion of the 38th Precinct which was annexed or disconnected. It did not attach to or become a part of a different precinct. Both before and after the change of the precinct boundaries in 1975, the voters in the area containing the subject property voted in the 38th Precinct. The dry portion of the 38th Precinct was not disconnected. It could not have been attached to or detached from itself. The trial court correctly determined that the area in

which the subject property is located is not annexed or disconnected, and that its dry status may be changed only by a referendum vote.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY and RIZZI, JJ., concur.